# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **KIMBERLY L. BRANNON, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v.  ) | **Case No.: 4:13-CV-1229-VEH** |
| ) | |
| **CITY OF GADSDEN, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

## I.   INTRODUCTION AND PROCEDURAL HISTORY

Plaintiffs[1] initiated this civil rights lawsuit and purported class action on July 1, 2013, against Defendants City of Gadsden ("COG"), City of Attalla ("COA"), Lenesha Zaner ("Ms. Zaner"), and the Etowah County Court Referral Program, LLC (the "ECCRP"). (Doc. 1). Plaintiffs generally maintain that they have suffered constitutional and other injuries stemming from the contractual provision of drug and alcohol testing services, rehabilitation services, and monitoring services by ECCRP and its director, Ms. Zaner, for the benefit of COG and COA in conjunction with the

---

[1] The eight named plaintiffs are Kimberly L. Brannon ("Ms. Brannon"), Charles Cantrell ("Mr. Cantrell"), Joseph R. Dubose ("Mr. Dubose"), Ricky L. Hunter ("Mr. Hunter"), Dustin A. Loyd ("Mr. Loyd"), Jason L. Lynn ("Mr. Lynn"), Erica Snow ("Ms. Snow"), and Roy Myers ("Mr. Myers").

administration of their municipal justice systems. (Doc. 22 at 4 ¶ 9). The gravamen of Plaintiffs' suit is that Defendants are all engaged in an unconstitutional post-arrest "court referral program" (the "Program") that has deprived them (and the purported subclass members whom they seek to represent) of their civil rights. (Doc. 22 at 2, 15).

By way of separate Motions To Dismiss (Docs. 10, 16) (the "First Dismissal Motions"), Defendants challenged the sufficiency of Plaintiffs' initial pleading and, on August 19, 2013, Plaintiffs filed a first amended and restated complaint (Doc. 22), which rendered the then pending First Dismissal Motions moot. (*See* consecutive CM/ECF margin entries dated Aug. 20, 2013 (terming as moot Docs. 10 and 16)).

As summarized in Plaintiffs' restated complaint:

> This is an action for damages sustained by citizens of the United States against Defendants when Defendants' officers, agents, employees and/or representatives unreasonably subjected Plaintiffs and the Class to warrants, arrests, confinements, unreasonable and unlawful fines, costs and fees, prosecution beyond the jurisdiction of the court and without due process of law and/or kept Plaintiffs subjected to a "court referral program" willfully, wantonly, intentionally, and/or with reckless disregard of Plaintiffs' civil rights and due process as citizens of the State of Alabama and the United States of America. Additionally, this action is against Defendants for their deliberate indifference towards Plaintiffs and for their failure to properly train and supervise their agents, officers and/or employees to assure Plaintiffs' constitutional rights to due process. Further, Defendants failed to implement proper policies, procedures and customs to protect Plaintiffs' constitutional rights and rights to due process.

(Doc. 22 at 2).

Some of the plaintiffs, *i.e.*, Ms. Brannon, Mr. Cantrell, Mr. DuBose, Mr. Hunter, and Mr. Myers (collectively, the "Post-Sentence Plaintiffs") complain about their treatment under the Program after being "placed on probation . . . ." (Doc. 22 at 5 ¶ 12; *id.* at 6 ¶ 13; *id.* at 7 ¶ 14; *id.* at 9 ¶ 15; *id.* at 14 ¶ 19). Others, such as Mr. Loyd, Mr. Lynn, and Ms. Snow (collectively, the "Delayed/Suspended-Sentence Plaintiffs"), complain about problems which they allegedly encountered under Program after (at least initially) either having their prosecution deferred or their sentence suspended. (*See id.* at 10 ¶ 16 (prosecution deferred); *id.* at 11 ¶ 17 (suspended sentence); *id.* at 13 ¶ 18 (prosecution deferred)).

In their amended pleading, Plaintiffs assert seven counts arising under a mixture of federal and Alabama law against all "Defendants" collectively: count I is for violations of 42 U.S.C. § 1983 arising under federal law; count II is for denial of due process arising under federal and Alabama law; count III is for violation of constitutional amendments arising under federal and Alabama law; count IV is for false imprisonment arising under federal and Alabama law; and count V is for false arrest arising under federal and Alabama law; count VI is for abuse of process arising under federal and Alabama law; and count VII is for negligent, reckless and/or wanton training and/or supervision and does not assert a specific source of law.

(Doc. 22 at 24-41).

On September 3, 2013, Defendants ECCRP and Ms. Zaner filed a second Motion To Dismiss (Doc. 24),[2] and Defendants COG and COA followed with their second Motion To Dismiss (Doc. 26) (collectively, the "Second Dismissal Motions") on September 6, 2013.  These Second Dismissal Motions have been fully briefed and are now under submission.  (Docs. 24-1, 24-2, 27, 32, 34-35).

Also pending before the court are Defendants COG and COA's Motion To Stay Case Pending Disposition of Motions To Dismiss (Doc. 28) (the "Stay Motion") filed on September 6, 2013, and Defendants ECCRP and Ms. Zaner's Motion for Joinder (Doc. 37) (the "Joinder Motion") filed on September 27, 2013.  The Stay and Joinder Motions have also been briefed and likewise are ready for disposition.  (*See* Docs. 30 (opposition to Stay Motion), 34 (reply in support of Stay Motion), 38 (opposition to Joinder Motion)).

## II.   STANDARDS

### A.   Rule 12(b)(1)

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, Defendants challenge the court's jurisdiction to hear this case under the *Rooker-Feldman*

---

[2] Any page references to Doc. 24 correspond with the court's CM/ECF numbering system.

doctrine.[3] As the Eleventh Circuit has articulated regarding this jurisdictional inquiry:

> The *Rooker-Feldman* doctrine makes clear that federal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court. *See Feldman*, 460 U.S. at 482, 103 S. Ct. at 1315. The doctrine applies both to federal claims raised in the state court and to those "inextricably intertwined" with the state court's judgment. *Id.* at 482 n. 16, 103 S. Ct. at 1315 n. 16. It does not apply, however, where a party did not have a "reasonable opportunity to raise his federal claim in state proceedings." *Powell*, 80 F.3d at 467 (internal quotation marks omitted). <u>A claim is inextricably intertwined if it would "effectively nullify" the state court judgment, *id.* (internal quotation marks omitted), or it "succeeds only to the extent that the state court wrongly decided the issues.</u>" *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001).
>
> While the Supreme Court's recent *Rooker-Feldman* decisions have noted the "narrowness" of the rule, *see Lance v. Dennis*, 546 U.S. 459, 464, 126 S. Ct. 1198, 1201, 163 L. Ed. 2d 1059 (2006), they have also confirmed that it continues to apply with full force to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 1521-22, 161 L. Ed. 2d 454 (2005). Other circuits have recognized an exception to the doctrine where the state court judgment is "void *ab initio* due to the state court's lack of jurisdiction," *see, e.g.*, 4901 *Corp. v. Town of Cicero*, 220 F.3d 522, 528 (7th Cir. 2000); *In re James*, 940 F.2d 46, 52 (3d Cir.1991), but our

---

[3] "The *Rooker- Feldman* doctrine derives from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983)." *Alvarez v. Attorney General for Fla.*, 679 F.3d 1257, 1262 (11th Cir. 2012).

circuit has never adopted that exception.

*Casale v. Tillman*, 558 F.3d 1258, 1260-61 (11th Cir. 2009) (emphasis added).

Defendants also contend that Plaintiffs lack standing to assert claims for declaratory and injunctive relief. "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Stalley v. Orlando Reg'l Healthcare Sys.*, 524 F.3d 1229, 1232 (11th Cir. 2008).

The Supreme Court of the United States has recently elaborated upon several principles pertaining to the constitutional doctrine of standing:

> Article III of the Constitution confines the judicial power of federal courts to deciding actual "Cases" or "Controversies." §2. <u>One essential aspect of this requirement is that any person invoking the power of a federal court must demonstrate standing to do so</u>. This requires the litigant to prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U. S. 555, 560–561 (1992). In other words, for a federal court to have authority under the Constitution to settle a dispute, the party before it must seek a remedy for a personal and tangible harm. "The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's requirements." *Diamond, supra*, at 62.
>
> * * *
>
> Most standing cases consider whether a plaintiff has satisfied the requirement when filing suit, <u>but Article III demands that an "actual controversy" persist throughout all stages of litigation</u>. *Already, LLC v.*

*Nike, Inc.*, 568 U. S. ___, ___ (2013) (slip op., at 4) (internal quotation marks omitted).

*Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661, 186 L. Ed. 2d 768 (2013) (emphasis added).

### B.     Rule 12(b)(6)

Both Second Dismissal Motions also dispute the adequacy of Plaintiffs' amended pleading under Rule 12(b)(6). A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. *See* Fed. R. Civ. P. 12(b)(6). The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *see also* Fed. R. Civ. P. 8(a).

While a plaintiff must provide the grounds of his entitlement to relief, Rule 8 does not mandate the inclusion of "detailed factual allegations" within a complaint. *Twombly*, 550 U.S. at 545 (quoting *Conley*, 355 U.S. at 47). However at the same time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent

with the allegations in the complaint." *Twombly*, 550 U.S. at 563.

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1950. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine <u>whether they plausibly give rise to an entitlement to relief</u>." *Id.* (emphasis added). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line from conceivable to plausible.' *Ibid.*" *Iqbal*, 129 S. Ct. at 1950-51.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## III. ANALYSIS

### A. The Second Dismissal Motions

#### 1. Shotgun Filings

ECCRP and Ms. Zaner assert seven categories of defenses to Plaintiffs'

restated claims: (1) qualified immunity; (2) quasi-judicial immunity; (3) *Rooker-Feldman* doctrine and/or principles of federalism and comity; (4) no plausible claim for relief; (5) shotgun pleading; (6) constitutional claims are deficient; and (7) common-law claims are deficient.  (Doc. 24 at 2-3).

According to the table of contents of their brief (Doc. 27 at 2), COG and COA's Second Dismissal Motion purportedly asserts nineteen categories of defenses to Plaintiffs' claims: (1) Alabama Court system; (2) Mandatory Treatment Act of 1990; (3) Alabama Constitution; (4) criminal procedure; (5) judicial immunity; (6) municipal control and the *Monell* doctrine; (7) pleadings standard; (8) insufficient factual allegations; (9) Fifth Amendment; (10) remedies; (11) injunctive relief and standing; (12) malicious and wanton conduct; (13) punitive damages; (14) statute of limitations; (15) *ante litem*/non-claim statutes; (16) *Rooker-Feldman* doctrine; (17) federalism and comity; (18) misjoinder; and (19) co-defendants' argument.

Defendants' kitchen sink approach to defending against Plaintiffs' claims is largely underdeveloped, cumbersome, and ineffective.  *Cf. Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (stating that an argument made without citation to authority is

insufficient to raise an issue before the court). However, at the same time, the court acknowledges that the shotgun nature of Plaintiffs' amended pleading is the likely impetus behind Defendants' overly board and poorly formulated filings.

While Plaintiffs' amended complaint is somewhat more specific than the original one that was filed, it is still pled in a shotgun format, a practice which is strongly disfavored by the Eleventh Circuit. *See, e.g., Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979 & n.54 (11th Cir. 2008) ("The complaint is a model 'shotgun' pleading of the sort this court has been roundly, repeatedly, and consistently condemning for years, long before this lawsuit was filed.").[4]

---

[4] *Davis* footnote 54 gives numerous examples of Eleventh Circuit anti-shotgun references and states in full:

> *See, e.g., United States ex el. Atkins v. McInteer*, 470 F.3d 1350, 1354 n. 6 (11th Cir.2006); *M.T.V. v. DeKalb County Sch. Dist.*, 446 F.3d 1153, 1156 n. 1 (11th Cir.2006); *Ambrosia Coal and Constr. Co. v. Morales*, 368 F.3d 1320, 1330 n. 22 (11th Cir.2004); *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1296 nn. 9–10 (11th Cir.2002); Byrne v. Nezhat, 261 F.3d 1075, 1128–34 (11th Cir.2001); *Magluta v. Samples*, 256 F.3d 1282 (11th Cir.2001); *BMC Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322, 1326–27 n. 6 (11th Cir.1998); *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1368 (11th Cir.1998); *Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir.1997); *Ibrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162 *passim* (11th Cir.1997); *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366–67 (11th Cir.1996); *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1567 (11th Cir.1995); *Cesnik v. Edgewood Baptist Church*, 88 F.3d 902, 905 (11th Cir.1996); *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1483–84 (11th Cir.1992); *Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir.1991); *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1543–44 n. 14 (11th Cir.1986) (Tjoflat, J., dissenting). This list is just a teaser—since 1985 we have explicitly condemned shotgun pleadings upward of fifty times.

*Davis*, 516 F.3d at 979 n.54.

For example, because Plaintiffs have filed a shotgun pleading, it is impossible to ascertain which specific claims are asserted by which specific plaintiffs against which specific defendants and, for Ms. Zaner, the only individual defendant, in which of her capacities.[5] This vagueness makes an evaluation of the defenses of qualified immunity and quasi-judicial immunity impractical.[6]

Plaintiffs also have confusingly lumped claims arising under federal law with others arising under state law within the same count. Additionally, Plaintiffs have duplicated claims. *Compare* claims asserted in count I *with* those set forth in counts II and III.

Another problem with Plaintiffs' pleading is that they fail to clarify whether they have completed their term of probation under the Program. This information is pertinent, *inter alia*, to deciphering whether each a particular named Plaintiff has

---

[5] A § 1983 claim against a person in her official capacity seeks to impose liability on the entity which she represents, and not on her personally. *See, e.g., Welch v. Laney*, 57 F.3d 1004, 1008 (11th Cir. 1995) ("Welch's action against the Sheriff and Chief Deputy Sheriff in their official capacities imposes liability on the entity they represent, and not on them as individuals." (citing *Brandon v. Holt*, 469 U.S. 464, 471-72, 105 S. Ct. 873, 877-78, 83 L. Ed. 2d 878 (1985))).

[6] While Plaintiffs have indicated in their brief that Ms. Zaner has been sued in her individual capacity (*see* Doc. 23 at 13 ("Zaner is the only defendant named in [her] individual capacity.")), their pleading is not so clear. For example, the case caption does not reflect whether Ms. Zaner is being sued officially, individually, or both. (Doc. 22 at 1). Further, Plaintiffs' description of Ms. Zaner as a party makes no mention of her official versus personal capacity. (Doc. 22 at 4 ¶ 10). Additionally, none of Plaintiffs' counts makes an effort to delineate whether Ms. Zaner is being sued for monetary damages on an individualized basis. Finally, Plaintiffs cannot use their brief as a means to amend or restate their pleading.

individualized standing to assert claims for declaratory and injunctive relief against Defendants.

Similarly, Plaintiffs do not state whether their criminal convictions have become final. These missing allegations relate to jurisdictional concerns and this court is obligated to verify (and not just reasonably infer) that jurisdiction exists. (*Cf.* Doc. 32 at 40 ("Thus, this Court could reasonably infer that Plaintiffs have demonstrated and pled continued constitutional violations and that a real and immediate threat of future violations of protected rights could cause irreparable injury to Plaintiffs and the Class.")).

In repleading, Plaintiffs must study the *Davis* decision and the numerous cases cited therein and draft a much more definite and comprehendible pleading. The claims of <u>each Plaintiff</u> against <u>each Defendant</u> must be set forth in separately numbered counts. Further, Plaintiffs' restated pleading must include only <u>plausibly</u> stated claims and avoid lumping any causes of action together.[7] Finally, Plaintiffs should endeavor to streamline their claims and allegations and reduce unnecessary duplication of their contentions.

---

[7] By way of further example, Ms. Brannon, who alleges that she "was arrested for a misdemeanor by the City of Gadsden" (Doc. 22 at 5 § 12), cannot plausibly state any claim against the COA.

### 2. Other Defenses

Because of the nature of this court's ruling, it does not reach the merits of the other defenses raised in the Second Dismissal Motions, and those parts of the Second Dismissal Motions are **TERMED** as **MOOT**. Defendants will have an opportunity to reassert them to the extent that such is warranted after Plaintiffs replead.

However, the court cautions Defendants that it will not look favorably upon the assertion of any underdeveloped defenses, including, but not limited to, the failure to cite to on-point case authority in support of their position(s). Additionally, Defendants will not be permitted to adopt arguments contained in other briefs. Instead, with the exception of any jurisdictional inquiries, the court will limit its consideration to only those defenses and contentions expressly formulated in the parties' respective briefing.

### B. Stay Motion

In light of the court's rulings above, the Stay Motion is **GRANTED**. In particular, conducting discovery at this juncture would be premature as the proper scope of Plaintiffs' plausibly-stated claims has yet to be determined, and the stay will remain in place either until Defendants have answered or the court has addressed the merits of any subsequently filed motion(s) to dismiss.

## C.     Joinder Motion

In light of the court's rulings above, the Joinder Motion is **TERMED** as **MOOT**.

## IV.    CONCLUSION

As set forth above, the Second Dismissal Motions are **GRANTED IN PART** and **TERMED** as **MOOT IN PART**. Further, the Stay Motion is **GRANTED**, and the Joinder Motion is **TERMED** as **MOOT**. Finally, Plaintiffs are **HEREBY GRANTED** until January 31, 2014, to replead only their plausible claims in a non-shotgun format and to address the other concerns raised in this memorandum opinion.

**DONE** and **ORDERED** this the 4th day of December, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge