FILED

2015 Mar-10  AM 10:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **KIMBERLY L. BRANNON, et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **Case No.: 4:13-CV-1229-VEH** |
| | ) |
| **CITY OF GADSDEN, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

---

## MEMORANDUM OPINION AND ORDER

## I.   INTRODUCTION AND PROCEDURAL HISTORY

Plaintiffs[1] initiated this civil rights lawsuit and purported class action on July 1, 2013, against Defendants City of Gadsden ("COG"), City of Attalla ("COA"), Lenesha Zaner ("Ms. Zaner"), and the Etowah County Court Referral Program, LLC (the "ECCRP"). (Doc. 1). Plaintiffs generally maintain that they have suffered constitutional and other injuries stemming from drug and alcohol testing services, rehabilitation services, and monitoring services contractually provided by ECCRP and its director, Ms. Zaner, for the benefit of COG and COA in conjunction with the

---

[1]  The eight named plaintiffs are Kimberly L. Brannon ("Ms. Brannon"), Charles Cantrell ("Mr. Cantrell"), Joseph R. Dubose ("Mr. Dubose"), Ricky L. Hunter ("Mr. Hunter"), Dustin A. Loyd ("Mr. Loyd"), Jason L. Lynn ("Mr. Lynn"), Erica Snow ("Ms. Snow"), and Roy Myers ("Mr. Myers").

administration of their respective municipal justice systems. (Doc. 45 at 6 ¶ 16; *id.* at 7 ¶ 20). The gravamen of Plaintiffs' suit is that Defendants are all engaged in an unconstitutional post-arrest/conviction "court referral program" (the "Program") that has deprived them (and the purported subclass members whom they seek to represent) of their civil rights, including allegedly subjecting Plaintiffs "to probation revocation, contempt orders, and incarcerations without first making a written finding of the Plaintiffs' willful nonpayment of fees" and placing them "into a never-ending cycle of ECCRP fees, costs and requirements" in violation of "the statutory maximum allowed for misdemeanors." (Doc. 45 at 8 ¶ 25; *id.* at 9 ¶ 27; *id.* at 8 ¶ 26).

Most of the plaintiffs (*i.e.*, Ms. Brannon, Mr. Cantrell, Mr. DuBose, Mr. Loyd, Mr. Lynn, and Mr. Hunter) complain about their treatment under the Program after being convicted of a misdemeanor charge as adults, receiving some type of a jail sentence (suspended or otherwise), and being required to participate in the Program. (*See* Doc. 45 at 17 ¶ 63 (Ms. Brannon's conviction and terms); *see id.* at 22 ¶ 85 (Mr. Cantrell's conviction and terms);[2] *see id.* at 29 ¶ 102 (Mr. DuBose's conviction and terms); *id.* at 32 ¶ 111 (Mr. Loyd's conviction and terms); *see id.* at 41 ¶ 140 (Mr. Lynn's conviction and terms); *see id.* at 44 ¶ 149 (Mr. Hunter's conviction and terms)). Others, such as Ms. Snow and Mr. Myers, received youthful offender status

---

[2]  Mr. Cantrell did not receive a jail sentence. (Doc. 45 at 22 ¶ 85).

and apparently no conviction on their record, but still were ordered to participate in the Program. (*See* Doc. 45 at 25-26 ¶ 92 (prosecution deferred, no jail sentence, and Program participation for Ms. Snow); (*see id.* at 37 ¶ 128 (no conviction mentioned for Mr. Myers, but subject to 30-day jail sentence and Program participation)).

After a round of briefing on multiple motions to dismiss (Docs. 24, 26), the court identified several problems with Plaintiffs' pleading, including its shotgun nature, granted the initial motions to dismiss in part, and ordered Plaintiffs to file an amended pleading. (*See generally* Doc. 40). The remainder of the issues raised in those motions were termed as moot in light of such repleader order. *Id.*

## Plaintiffs' Restated Claims

On March 4, 2014, Plaintiffs filed a corrected version of their second amended and restated complaint. (Doc. 45). This pleading has 20 counts, 434 paragraphs, and is 125 pages long.

The counts arise under both federal and state law. The federal counts are as follows:[3]

---

[3] Plaintiffs uniformly assert the following alleged injuries in the last paragraph of each one of these twelve constitutional counts:

> [H]aving fees converted to jail sentences; being unlawfully arrested or incarcerated for undetermined periods of time; injury to dignity; and the loss of liberty and property, by having fees levied after any lawful sentencing duration or statutory probation period has expired, and by being subjected to extended ECCRP requirements, fees, arrest warrants, arrests and incarcerations beyond any lawful

## TWELVE FEDERAL CONSTITUTIONAL COUNTS

- Count One–Denial of Due Process by ECCRP and/or Ms. Zaner in her Personal Capacity Applicable to All Plaintiffs (Doc. 45 ¶¶ 171-198);

- Count Two–Denial of Due Process by COG Applicable to Plaintiffs Brannon, DuBose, Loyd, Lynn, Snow and Myers (*Id.* ¶¶ 199-218);

- Count Three–Denial of Due Process by COA Applicable to Plaintiffs Cantrell, Hunter and Loyd  (*Id.* ¶¶ 219-218);

- Count Four–Violation of the Fourth Amendment by ECCRP and/or Ms. Zaner in her Personal Capacity Applicable to All Plaintiffs  (*Id.* ¶¶ 239-252);

- Count Five–Violation of the Fourth Amendment by COG Applicable to Plaintiffs Brannon, DuBose, Loyd, Lynn, Snow and Myers (*Id.* ¶¶ 253-265);

- Count Six–Violation of the Fourth Amendment by COA Applicable to Plaintiffs Cantrell, Hunter and Loyd  (*Id.* ¶¶ 266-278);

- Count Seven–Violation of the Eighth Amendment by ECCRP and/or Ms. Zaner in her Personal Capacity Applicable to All Plaintiffs (*Id.* ¶¶ 279-302);

- Count Eight–Violation of the Eighth Amendment by COG Applicable to Plaintiffs Brannon, DuBose, Loyd, Lynn, Snow and Myers (*Id.* ¶¶ 303-325);

- Count Nine–Violation of the Eighth Amendment by COA Applicable to

---

sentencing duration and the statutory maximum probation period allowed for misdemeanors.

(Doc. 45 at 62 ¶ 198; *id.* at 67-68 ¶ 218; *id.* at 73 ¶ 238; *id.* at 77 ¶ 252; *id.* at 80 ¶ 265; *id.* at 83 ¶ 278; *id.* at 89-90 ¶ 302; *id.* at 96 ¶ 325; *id.* at 102 ¶ 347; *id.* at 105 ¶ 359; *id.* at 107-08 ¶ 370; *id.* at 110 ¶ 381).

Plaintiffs Cantrell, Hunter and Loyd  (Doc. 45 ¶¶ 326-347);

- Count Ten–Denial of Equal Protection by ECCRP and/or Ms. Zaner in her Personal Capacity Applicable to All Plaintiffs (*Id.* ¶¶ 348-359);

- Count Eleven–Denial of Equal Protection by COG Applicable to Plaintiffs Brannon, DuBose, Loyd, Lynn, Snow and Myers (*Id.* ¶¶ 360-370); and

- Count Twelve–Denial of Equal Protection by COA Applicable to Plaintiffs Cantrell, Hunter and Loyd  (*Id.* ¶¶ 371-381).

Plaintiffs' remaining counts include:

## SEVEN STATE LAW COUNTS

- Count Thirteen–False Imprisonment and False Arrest by ECCRP and/or Ms. Zaner (Without Reference to Her Capacity) Applicable to All Plaintiffs (Doc. 45 ¶¶ 382-390);

- Count Fourteen–False Imprisonment and False Arrest by COG Applicable to Plaintiffs Brannon, DuBose, Loyd, Lynn, Snow and Myers (*Id.* ¶¶ 391-398);

- Count Fifteen–False Imprisonment and False Arrest by COA Applicable to Plaintiffs Cantrell, Hunter and Loyd  (*Id.* ¶¶ 399-407);

- Count Sixteen–Abuse of Process by ECCRP and/or Ms. Zaner (Without Reference to Her Capacity) Applicable to All Plaintiffs (*Id.* ¶¶ 408-413);

- Count Seventeen–Negligent, Reckless and/or Wanton Training and/or Supervision by ECCRP and/or Zaner Applicable to All Plaintiffs (*Id.* ¶¶ 414-417);

- Count Eighteen–Negligent, Reckless and/or Wanton Training and/or Supervision by COG Applicable to Plaintiffs Brannon, DuBose, Loyd, Lynn, Snow and Myers (*Id.* ¶¶ 418-421);

- Count Nineteen–Negligent, Reckless and/or Wanton Training and/or Supervision by COA Applicable to Plaintiffs Cantrell, Hunter and Loyd (Doc. 45 ¶¶ 422-425); and

## ONE DECLARATORY/INJUNCTIVE COUNT

- Count Twenty–Declaratory and Injunctive Relief Applicable to All Plaintiffs (*Id.* ¶¶ 426-434).

## Defendants' Motions

Pending before the court and under submission are two motions relating to Plaintiffs' second amended and restated complaint: (1) Defendants ECCRP and Ms. Zaner's Motion To Dismiss (Doc. 47) (the "ECCRP and Ms. Zaner's Motion") filed on March 25, 2014; and (2) the COG and COA's Motion To Dismiss Pursuant to Rule 12(b)(6), Fed. R. Civ. P. (Doc. 48) (the "COG and COA's Motion") filed on March 28, 2014.

These most recent motions raise a litany of defenses and, in many respects, mirror those filed earlier with the court. The dismissal grounds asserted by ECCRP and Ms. Zaner are: (1) failure to state a claim based upon the provisions of the Mandatory Treatment Act, Ala. Code § 12-23-7 (Doc. 47 at 7-11); (2) qualified immunity (Doc. 47 at 11-17); (3) lack of standing to pursue declaratory and injunctive relief (*id.* at 17-19); and (4) the *Heck v. Humphrey* doctrine.[4] (Doc. 47 at 19-23).

---

[4] ECCRP does not assert an Eleventh Amendment immunity defense. However, given that Alabama's Administrative Office of Courts (the "AOC") selected the ECCRP to provide probation

The dismissal grounds raised by the COG and COA include:  (1) judicial immunity (Doc. 49 at 18-21);[5] (2) probation officer immunity (Doc. 49 at 21-22); (3) municipal control and the *Monell* doctrine (*id.* at 22-26); (4) post-deprivation remedies, including the *Heck v. Humphrey* doctrine  (Doc. 49 at 26-27); (5) private debt (*id.* at 27-28); (6) *Rooker-Feldman* doctrine (Doc. 49 at 28-31);[6] (7) no standing for injunctive relief (*id.* at 31); (8) no municipal liability for alleged false imprisonment and false arrest (*id.* at 32); (9) no municipal liability for alleged wanton conduct (*id.* at 32); (10) no municipal liability for alleged punitive damages (*id.* at

services to fourteen different courts located in Etowah County in an effort to comply with the requirements of the Mandatory Treatment Act of 1990, Ala. Code § 12-23-4 (Doc. 47 at 4-4; *see also* Doc. 47-1), the court inquired during the hearing whether ECCRP could be considered an agency or instrumentality of the state such that Eleventh Amendment immunity should apply to bar all claims asserted against it. *See, e.g., Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S. Ct. 568, 572, 50 L. Ed. 2d 471 (1977) ("The issue here thus turns on whether the Mt. Healthy Board of Education is to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend."); *Sessions v. Rusk State Hospital*, 648 F.2d 1066, 1069 (5th Cir. 1981) ("Whether an entity is an arm of the state partaking of the state's eleventh amendment immunity turns on its function and characteristics as determined by state law." (citing *Doyle*)); *see also Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent for the Eleventh Circuit all decisions of the former Fifth Circuit handed down prior to October 1, 1981). As counsel for ECCRP explained in response to the court's question, ECCRP is a privately incorporated entity that carries its own professional liability insurance.  Consequently, counsel rejected the defense of Eleventh Amendment immunity, based upon present information, because no damages (if awarded) would come directly out of the state treasury.

[5]  All page references to Doc. 49 correspond with the court's CM/ECF numbering system.

[6]  "The *Rooker-Feldman* doctrine derives from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983)." *Alvarez v. Attorney General for Fla.*, 679 F.3d 1257, 1262 (11th Cir. 2012).

33); (11) no municipal liability for alleged negligent supervision and training (*id.* at

33-34); (12) statute of limitations (*id.* at 34-42); (13) failure of certain plaintiffs to

state a claim against COA (*id.* at 43-44); and (14) failure of certain plaintiffs to state

a claim against COG. (*Id.* at 44-45).

Plaintiffs opposed these motions on April 18, 2014. (Doc. 51). Defendants

followed with their reply briefs on May 9, 2014. (Docs. 53, 54). On February 4, 2015,

the court held a hearing on these motions in Anniston. (Doc. 58). For the reasons

stated in open court and, as further explained below, both motions are due to be

**GRANTED IN PART** and otherwise **DENIED**.

## II.   STANDARDS

### A.   Rule 12(b)(1)

Unlike state courts, federal tribunals are bodies of limited jurisdiction, meaning

that the grounds for the court's jurisdiction over the claims asserted by the plaintiff

must be present at the time the complaint is filed and must be obvious on the face of

the complaint. Fed. R. Civ. P. 8(a); 28 U.S.C. § 1330, *et seq.* The law is clear that

Plaintiffs, the parties seeking to invoke federal jurisdiction in this case, have the

burden to demonstrate that the court has subject matter jurisdiction. *See McNutt v.*

*General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S. Ct. 780, 785, 80 L. Ed.

1135 (1936) ("They are conditions which must be met by the party who seeks the

exercise of jurisdiction in his favor . . . . [and a]s he is seeking relief subject to this supervision, it follows that he must carry throughout the litigation the burden of showing that he is properly in court."); *see also McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) (per curiam) ("[T]he party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction.").

Further, lack of subject matter jurisdiction cannot be waived or expanded by judicial interpretation, and a jurisdictional deficiency can be raised at any time by either the parties or the court. *See, e.g., Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17-18, 71 S. Ct. 534, 542,  95 L. Ed. 702 (1951) ("The jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation or by prior action or consent of the parties."); *Sosna v. Iowa*, 419 U.S. 393, 398, 95 S. Ct. 553, 557, 42 L. Ed. 2d 532 (1975) ("While the parties may be permitted to waive nonjurisdictional defects, they may not by stipulation invoke the judicial power of the United States in litigation which does not present an actual 'case or controversy,' and . . . we feel obliged to address the question of mootness before reaching the merits of appellant's claim.") (citation omitted).

**B.      Rule 12(b)(6)**

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. *See* Fed.

R. Civ. P. 12(b)(6) ("[A] party may assert the following defenses by motion:  (6) failure to state a claim upon which relief can be granted[.]"). The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957) (footnote omitted) (quoting Fed. R. Civ. P. 8(a)(2)), *abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007); *see also* Fed. R. Civ. P. 8(a) (setting forth general pleading requirements for a complaint including providing "a short and plain statement of the claim showing that the pleader is entitled to relief").

While a plaintiff must provide the grounds of his entitlement to relief, Rule 8 does not mandate the inclusion of "detailed factual allegations" within a complaint. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 (quoting *Conley*, 355 U.S. at 47, 78 S. Ct. at 103). However, at the same time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563, 127 S. Ct. at 1969.

"[A] court considering a motion to dismiss can choose to begin by identifying

10

pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine <u>whether they plausibly give rise to an entitlement to relief</u>." *Id.* (emphasis added). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line from conceivable to plausible.' *Ibid*." *Iqbal*, 556 U.S. at 680, 129 S. Ct. at 1950-51.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965).

## III.   ANALYSIS

### A.   Standing

#### 1.   Standing Principles

Defendants also contend that Plaintiffs lack standing to assert claims for declaratory and injunctive relief. "Because standing is jurisdictional, a dismissal for

lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Stalley v. Orlando Reg'l Healthcare Sys.*, 524 F.3d 1229, 1232 (11th Cir. 2008).

The Eleventh Circuit has summarized the doctrine of standing as follows:

> To have standing in federal court, a plaintiff must meet three requirements. First, he must have suffered an injury in fact: "an invasion of a legally protected interest." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). The injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* (quotations and citations omitted). Second, there must be a causal connection between his injury and the conduct he challenges, *i.e.*, his injury must be fairly traceable to the challenged actions of the defendant. *Id.* Third, it must be likely that plaintiff's injury will be redressed by a favorable decision of the court. *Id.* at 561, 112 S. Ct. at 2136.

*Sicar v. Chertoff*, 541 F.3d 1055, 1059 (11th Cir. 2008).

The Supreme Court of the United States has more recently elaborated upon several principles pertaining to standing:

> Article III of the Constitution confines the judicial power of federal courts to deciding actual "Cases" or "Controversies." §2. <u>One essential aspect of this requirement is that any person invoking the power of a federal court must demonstrate standing to do so</u>. This requires the litigant to prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U. S. 555, 560–561 (1992). In other words, for a federal court to have authority under the Constitution to settle a dispute, the party before it must seek a remedy for a personal and tangible harm. "The presence of a disagreement, however sharp and

acrimonious it may be, is insufficient by itself to meet Art. III's requirements." *Diamond, supra*, at 62, 106 S. Ct. 1697. . . .

Most standing cases consider whether a plaintiff has satisfied the requirement when filing suit, but Article III demands that an "actual controversy" persist throughout all stages of litigation. *Already, LLC v. Nike, Inc.*, 568 U. S. ___, ___ (2013) (slip op., at 4) (internal quotation marks omitted).

*Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661, 186 L. Ed. 2d 768 (2013) (emphasis added).

### 2.    Lack of standing bars only some of Plaintiffs' claims for declaratory and injunctive relief at this stage.

Relying upon the Supreme Court's decision in *O'Shea v. Littleton*, 414 U.S. 488, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974), as well as other authorities, Defendants maintain that Plaintiffs' efforts to obtain prospective relief against future adverse treatment under the Program are too speculative to confer standing upon them. As clarified during the hearing, Plaintiffs have conceded that Mr. Hunter and Mr. Cantrell are, indeed, precluded from seeking injunctive relief due to their closed status under the Program. (*See also* Doc. 51 at 33 ("There are Plaintiffs['] notes in a few court files or return to court forms indicat[ing] that CRO has been closed as relates to Cantrell, Hunter . . . .")).[7]

---

[7]  All page references to Doc. 51 correspond with the court's CM/ECF numbering system.

However, concerning Ms. Brannon, Mr. DuBose, Mr. Myers, Ms. Snow, Mr. Lynn,  and Mr. Loyd, Plaintiffs contend that these persons still remain subject to the Program and, consequently, do have sufficient standing to pursue prospective relief against all Defendants as alleged in their second amended and restated complaint. (*See also id.* ("However, none of the other Plaintiffs, Brannon, DuBose, Loyd's Attalla case, Myers and Snow, has any mention within the records provided that CRO has been closed in their respective cases.")).

Similar to the reasoning set forth in *Ray*, the court agrees with Plaintiffs that, at least from a pleadings standpoint, all but Mr. Hunter and Mr. Cantrell have standing to pursue claims for declaratory and injunctive relief because their cases lack confirmation that they are completely closed out and, consequently, they remain at risk for recall under the Program. *See Ray*, 2013 WL 5428395, at *15 ("Plaintiffs face the prospect of a return to jail at any time, imbuing them with the standing necessary to make claims for prospective injunctive relief."). Additionally, and in contrast with the concerns identified in *O'Shea*, the type of equitable relief sought here (*i.e.*, reforming and implementing new post-conviction procedures versus "monitor[ing] the behavior of law enforcement officials in the course of criminal prosecutions and generally ferret[ing] out racial discrimination at the state court level") is a much more manageable and objective endeavor. *Ray*, 2013 WL 5428395, at *15; *see id.* ("Unlike

14

the individual behavior targeted in *O'Shea*, reformation of the procedures complained of here would not require constant, painstaking determinations."). Accordingly, the injunctive section of both motions is due to be **GRANTED** as to Mr. Hunter and Mr. Cantrell only, and otherwise is due to be **DENIED**.

### B.    *Rooker-Feldman* Doctrine

#### 1.    *Rooker-Feldman* Principles

> The *Rooker–Feldman* line of cases has been described as the "jurisdictional transmutation of *res judicata* doctrine." 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4469 (1981). The essence of the *Rooker–Feldman* doctrine is that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings. Review of such judgments may be had only in [the United States Supreme Court]." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S. Ct. 1303, 1315, 75 L. Ed. 2d 206 (1983).

*Narey v. Dean*, 32 F.3d 1521, 1524 (11th Cir. 1994).

As the Eleventh Circuit has more recently explained the meaning of the

*Rooker-Feldman* doctrine:

> The *Rooker-Feldman* doctrine makes clear that federal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court. *See Feldman*, 460 U.S. at 482, 103 S. Ct. at 1315. The doctrine applies both to federal claims raised in the state court and to those "inextricably intertwined" with the state court's judgment. *Id.* at 482 n. 16, 103 S. Ct. at 1315 n. 16. It does not apply, however, where a party did not have a "reasonable opportunity to raise his federal claim in state proceedings." *Powell*, 80 F.3d at 467 (internal quotation marks

omitted). <u>A claim is inextricably intertwined if it would "effectively nullify" the state court judgment, *id.* (internal quotation marks omitted), or it "succeeds only to the extent that the state court wrongly decided the issues."</u> *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001).

> <u>While the Supreme Court's recent *Rooker-Feldman* decisions have noted the "narrowness" of the rule, *see Lance v. Dennis*, 546 U.S. 459, 464, 126 S. Ct. 1198, 1201, 163 L. Ed. 2d 1059 (2006), they have</u> also confirmed that it continues to apply with full force to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 1521-22, 161 L. Ed. 2d 454 (2005). Other circuits have recognized an exception to the doctrine where the state court judgment is "void *ab initio* due to the state court's lack of jurisdiction," *see, e.g.*, 4901 *Corp. v. Town of Cicero*, 220 F.3d 522, 528 (7th Cir. 2000); *In re James*, 940 F.2d 46, 52 (3d Cir.1991), but our circuit has never adopted that exception.

*Casale v. Tillman*, 558 F.3d 1258, 1260-61 (11th Cir. 2009) (emphasis added).

Additionally, "even if a claim is 'inextricably intertwined' with the state court's judgment, the doctrine does not apply if the plaintiff had no 'reasonable opportunity to raise his federal claim in state proceedings.'" *Powell v. Powell,* 80 F.3d 464, 467 (11th Cir. 1996) (quoting *Wood v. Orange County,* 715 F.2d 1543, 1547 (11th Cir. 1983)).

### 2.     *Rooker-Feldman* does not preclude Plaintiffs' claims.

Whether the *Rooker-Feldman* doctrine applies to an alleged unconstitutionally

16

administered court referral program is still an open question within the Eleventh Circuit. However, based upon the Eleventh Circuit's express recognition of the Supreme Court's limitations placed on the scope of *Rooker-Feldman*, *see Casale v. Tillman*, *supra*, and the Sixth Circuit's decision in *Powers v. Hamilton County Public Defender Commission*, 501 F.3d 592, 597 (6th Cir. 2007), discussed *infra*, which limits *Rooker-Feldman*'s reach in the context of a plaintiff's constitutional challenge to a reinstated sentence, the court concludes that the Eleventh Circuit would likely find that the doctrine does not apply to claims of mismanagement in the administration of municipal court sentences, such as the ones that are asserted in this case. Accordingly, the *Rooker-Feldman* doctrine poses no bar to Plaintiffs' claims.

      *Powers v. Hamilton County Public Defender Com'n*, 501 F.3d 592 (6th Cir. 2007), addressed the merits of a § 1983 certified class action premised upon an unconstitutional policy of neglecting "to seek indigency hearings on behalf of criminal defendants facing jail time for unpaid fines." *Id.* at 597. In *Powers*, the plaintiff, who was convicted of a motor vehicle misdemeanor in municipal court, was subsequently "sentenced to thirty days of incarceration" with twenty-seven of those days being suspended and "the remaining three days [to be served] in a driver-intervention program." *Id.* The municipal court also ordered Mr. Powers to pay court costs and a fine in connection with his traffic infraction. *Id.*

17

Mr. Powers did not ever pay the fine and he was ordered to appear at a probation revocation hearing. *Powers*, 501 F.3d at 597. During this setting, Mr. Powers was represented by a public defender,[8] who failed to request an indigency hearing on behalf of his client. *Id.* Because of the still outstanding fine, the state court revoked Mr. Powers's probation and reinstated Mr. Powers's original sentence of incarceration (less "credit for one day served"). *Id.* As a result, Mr. Powers "served at least one day in the Hamilton County jail for his failure to pay the fine." *Id*.

Mr. Powers then filed a federal "class-action complaint [against the public defender office, the public defender commission, and others] seeking damages under 42 U.S.C. § 1983 on the theory that his incarceration, in the absence of any inquiry into his ability to pay the court-imposed fine, violated his Fifth, Sixth, and Fourteenth Amendment rights."[9] *Powers*, 501 F.3d at 597. The defendants raised numerous

---

[8] During the hearing, counsel for Ms. Zaner and ECCRP urged that this court should disregard *Powers* as completely inapposite because of that decision's legal malpractice and breach of fiduciary implications attributable to the public defender's inactions. The court disagrees with counsel's interpretation of *Powers* and notes that the district court dismissed the plaintiff's legal malpractice claim in *Powers* on summary judgment. 501 F.3d at 598. Further, no portion of the appellate analysis in *Powers* implicitly suggests (much less expressly finds) that concerns of legal malpractice and/or fiduciary duty were critical to the Sixth Circuit's conclusion about the cognizable nature of the plaintiff's federal constitutional claims. 501 F.3d at 619.

[9] Here, Plaintiffs allege a similar type of indigent status deficiency. (*See, e.g.*, Doc. 45 at 19 ¶ 69 ("[N]either the Gadsden Municipal Court nor ECCRP made any inquiry into her inability to pay any such fees. ECCRP has sought to collect amounts owed to it, and ECCRP repeatedly took actions to arrest and  incarcerate Brannon without any due process."); *id.* at 35 ¶ 121 ("Loyd was and has been unable to pay all of the aforementioned fees associated with the ECCRP requirements, but in accordance with the policies, practices or customs of Attalla neither the Attalla Municipal Court nor

defenses to Mr. Powers's lawsuit, including one premised upon *Rooker-Feldman*. *Id.* at 598. Ultimately, the district court rejected this theory and also certified a class in Mr. Powers's favor. *Id.* On appeal, the Sixth Circuit affirmed the district court's decision that *Rooker-Feldman* did not preclude Mr. Powers's claims.

> The *Rooker–Feldman* doctrine bars parties that have lost in state court from filing suit in federal district courts for the purpose of obtaining review of the adverse state-court judgments. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983); *Johnson v. DeGrandy*, 512 U.S. 997, 1005–06, 114 S. Ct. 2647, 129 L. Ed. 2d 775 (1994) (*Rooker–Feldman* prevents an unsuccessful state-court party "from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights").

> The *Rooker–Feldman* doctrine has no bearing on Powers's claims because he does not allege that he was deprived of his constitutional rights by the state-court judgment, but rather by the Public Defender's conduct in failing to ask for an indigency hearing as a prerequisite to his incarceration. Assertions of injury that do not implicate state-court judgments are beyond the purview of the *Rooker–Feldman* doctrine. *See McCormick v. Braverman*, 451 F.3d 382, 392–93 (6th Cir. 2006) (holding *Rooker–Feldman* inapplicable because the plaintiff did not attack the state-court judgments but "assert[ed] independent claims that those state court judgments were [improperly] procured by" the defendants); *Todd v. Weltman, Weinberg, & Reis Co., L.P.A.*, 434 F.3d 432, 436–37 (6th Cir. 2006) (holding *Rooker–Feldman* not triggered

---

ECCRP ever made an inquiry into his inability or willful failure to pay any such fee."); *id.* at 58 ¶ 187 ("Under the policy, practice or custom between ECCRP and Alabama governments such as Gadsden and Attalla, misdemeanants are routinely and regularly incarcerated for failure to pay ECCRP fees without a determination of either their ability to pay or the willfulness of their non-payment.")).

because the plaintiff did not allege that he was injured by the state-court judgment, but instead filed an independent federal claim that he was injured by the defendant's filing of a false affidavit in the state-court proceeding).

*Powers*, 501 F.3d at 606 (emphasis added).

Additionally, relying upon *Powers*, Judge Proctor concluded that *Rooker-Feldman* did not bar the plaintiffs' claims in *Ray v. Judicial Corrections Services, Inc.*, No. 2:12–CV–02819–RDP, 2013 WL 5428395 (N.D. Ala. Sept. 26, 2013). Comparable to the allegations of this case, the *Ray* plaintiffs "assert[ed] that the Town of Childersburg, Alabama ("Childersburg") and Judicial Corrections Services, Inc./Correctional Healthcare Companies, Inc. (collectively "JCS") have abused their authority over municipal criminal defendants." 2013 WL 5428395, at *1. Under the Childersburg contractual arrangement with JCS, "[i]f an individual fails to pay a satisfactory amount, JCS then determines whether to revoke the individual's probation (in which case the individual jailed) or whether to impose additional fines and costs." *Id.* at *2.

In rejecting the application of *Rooker-Feldman* in *Ray*, the court reasoned:

> JCS also seeks dismissal of Plaintiffs' case on the basis of a lack of subject-matter jurisdiction, invoking the *Rooker–Feldman* doctrine to assert that consideration of Plaintiffs' suit would constitute impermissible "interference with valid state court judgments." The *Rooker–Feldman* doctrine stands for the proposition that "federal courts, other than the Supreme Court [of the United States], have no authority

20

to review the final judgments of state courts." *Siegel v. LePore*, 234 F.3d 1163, 1172 (11th Cir. 2000) (en banc). Indeed, *Rooker–Feldman* reinforces notions of federalism generally, and the statutory scheme of federal jurisdiction in particular, which "does not authorize district courts to exercise appellate jurisdiction over state-court judgments." *Verizon Maryland, Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635, 644 n.3 (2002). The *Rooker–Feldman* doctrine has its most direct application in instances where an unsuccessful state court litigant chooses not to pursue an appeal at the state level, instead resolving to challenge the state court decision in a lower federal court. *Exxon*, 544 U.S. at 284 (describing *Rooker–Feldman* as largely applicable to "cases brought by state-court losers ... inviting district court review and rejection of [the state court's] judgments"). To be sure, such attempts to invoke the jurisdiction of the federal courts are clearly misguided. But this case is not one of them. Here, Plaintiffs do not seek to overturn their convictions, but rather ask the court for various types of legal and equitable relief flowing from post-conviction events.

The *Rooker–Feldman* doctrine also applies to cases that have the potential to besmirch or void related state court judgments. *See, e.g., Goodman v. Sipos*, 259 F.3d 1327 (11th Cir. 2011). It is within this line of precedent that Defendant apparently attempts to couch the present case. Defendant implies that, like *Goodman*, this case represents an indirect challenge to the judgments of a state court, *i.e.*, the Childersburg Municipal Court. In *Goodman*, the Eleventh Circuit concluded that the district court did not have subject matter jurisdiction over a Section 1983 suit seeking damages for the submission of a fraudulent affidavit in a previously-litigated, child custody case. The *Goodman* court held that the affidavit in question was too central to the state court's judgment to later be challenged in federal court. *Goodman*, 259 F.3d at 1334. Properly understood, *Goodman* acts to preserve the spirit of *Rooker–Feldman* by shielding state court judgments from collateral attacks; however, its reasoning is inapplicable to this case. <u>Plaintiffs' suit does not amount to a collateral attack on any judgment of the Childersburg Municipal Court</u>. Indeed, the present scenario is readily distinguishable from that in *Goodman* in that Plaintiffs' suit does not address the judgments of the Childersburg Municipal Court in the least.

Not only does Plaintiffs' suit not challenge the merits of the municipal court's decisions, but it also does not call into question any of the bases on which those judgments were reached. <u>Rather, Plaintiffs appear only to challenge the post-judgment probationary program.</u>

In actuality, the instant case much more closely resembles *Powers v. Hamilton County Public Defender Commission*, a Sixth Circuit case in which a former prisoner brought a Section 1983 action, alleging that the Public Defender's policy of not pursuing indigency hearings for defendant due to be placed in jail for unpaid fines had resulted in the deprivation of his constitutional rights. 501 F.3d 592, 597 (6th Cir. 2007). On appeal, the Public Defender argued that the prisoner's suit should be summarily dismissed, as it called into question a previous state court judgment, *i.e.*, the underlying conviction. *Id.* at 598-99. The Sixth Circuit rebuffed this line of argument, holding, "<u>A conclusion that procedures, or rather the lack of procedures, that culminated in Power[s's] incarceration violated his constitutional rights has nothing to do with the propriety of his underlying convictions.</u>" *Id.* at 604. Likewise here, because it is <u>the administration of the municipal court's sentences that is the focus of the Plaintiffs' suit</u>, the *Rooker–Feldman* doctrine does not preclude this court's exercise of subject matter jurisdiction in the present case.

*Ray*, 2013 WL 5428395, at *10-*11 (footnote and record citations omitted) (emphasis added).

The court acknowledges that ECCRP attempts to discount the import of the *Ray* decision on the basis that it is organized under a different statutory scheme than JCS. (Doc. 47 at 6-7). However, in the absence of case authority suggesting that such a statutory distinction is somehow meaningful for purposes of *Rooker-Feldman*, ECCRP's efforts are underdeveloped and unavailing. *Cf. Flanigan's Enters., Inc. v.*

*Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (stating that an argument made without citation to authority is insufficient to raise an issue before the court).

Furthermore, the court has been unable to locate <u>any</u> decisions that reach an opposite conclusion about the scope of *Rooker-Feldman* when a plaintiff is challenging the propriety of policies applicable to revoking probation or administering a sentence. Therefore, guided by *Casale*, *Powers*, and *Ray*, Plaintiffs' claims are not jurisdictionally barred by *Rooker-Feldman* because the injuries about which they complain are not attributable to their state court <u>convictions</u>,[10] but rather to the policies and procedures of the ECCRP and Ms. Zaner (on behalf of the COG and COA) in the <u>administration</u> of Plaintiffs' criminal sentences. *Cf. Clark v. Beard*, 288 F. App'x 1, 2 (3d Cir. 2008) (concluding that *Rooker-Feldman* does not bar a criminal defendant from seeking "to be moved off of death row pending his re-sentencing" because "the injuries he complains of here were not caused by the state

---

[10] Indeed and as summarized above, apparently two of the eight named plaintiffs (*i.e.*, Ms. Snow and Mr. Myers) have no record of any criminal judgment or conviction, which makes the application of *Rooker-Feldman* to their claims even more dubious for them. *Cf. Ray*, 2013 WL 5428395, at *10 n.8 ("Substantive judgments were not even entered in three of the four plaintiffs' cases, as Mr. and Mrs. Fugatt's cases were nol prossed and Mr. Jews' case was dismissed.").

court judgment but rather by the Department of Corrections's policy.").

## C. *Heck v. Humphrey* Doctrine

### 1. *Heck v. Humphrey* Principles

Defendants also maintain that the monetary damages asserted by Plaintiffs for wrongful imprisonment or punishment are premature under *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). (Doc. 47 at 19-23). *Heck* involved an inmate's challenge of a conviction as unconstitutional pursuant to § 1983 while he was still in state custody. *See Heck*, 512 U.S. at 479, 114 S. Ct. at 2368 ("[The § 1983 lawsuit] did not ask for injunctive relief, and petitioner has not sought release from custody in this action.").

As the Supreme Court held in *Heck*:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action,

even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Heck*, 512 U.S. at 486-87, 114 S. Ct. at 2372-73 (footnotes omitted).[11]

> **2.** **Heck v. Humphrey** **does not preclude Plaintiffs from seeking monetary damages or other relief tied to their federal claims**.

How the Eleventh Circuit would address the viability of a *Heck* defense here is not easily answered. *Compare Harden v. Pataki*, 320 F.3d 1289, 1298 (11th Cir. 2003) (reasoning in improper extradition case that "In both *Heck* and *Edwards*, the Court was careful to emphasize that its holding did not impose an exhaustion requirement on § 1983 actions that would require a prisoner to first petition for a writ of habeas corpus under 18 U.S.C. § 2254, thus suggesting that the bar would apply even where habeas corpus review is unavailable"), *and Vickers v. Donahue*, 137 F. App'x 285, 288-89 (11th Cir. 2005) ("[I]n *Harden* we distinguished between claims under § 1983 that attacked purely procedural issues and those claims that implied the invalidity of a conviction, and found that the plaintiff's claim challenging the validity of the procedures used to extradite him could in no way imply the invalidity of the

---

[11] While *Heck* involved a § 1983 claim for monetary damages, "the Supreme Court has said that dismissal under the principles announced in *Heck* may be appropriate regardless of the kind of relief sought." *Esensoy v. McMillan*, No. 06-12580, 2007 WL 257342, at *1 n.6 (11th Cir. Jan. 31, 2007) (citing *Wilkinson v. Dotson*, 544 U.S. 74, 125 S. Ct. 1242, 1248, 161 L. Ed. 2d 253 (2005)).

underlying conviction."), *and Vickers*, 137 F. App'x at 288 ("He could have appealed

the revocation order and, had he prevailed, his § 1983 claims would not be barred by

*Heck*."), *with Gray v. Kinney*, No. 3:09CV324/LC/MD,  2009 WL 2634205, at *5

(N.D. Fla. Aug. 25, 2009) ("The Eleventh Circuit has not explicitly decided whether

*Heck* bars § 1983 suits by plaintiffs who are not in custody and thus for whom federal

habeas relief is not available."), *and with id.* ("In *dicta* and unpublished opinions, the

court has expressed <u>mixed views</u> on the subject." (emphasis added)).

In support of their position, Defendants primarily rely upon the magistrate

judge's report and recommendation (Doc. 8) entered in the prisoner suit of *Moore v.*

*Court Referral Office of Etowah County*, 4:09-CV-0933-IPJ-JEO,[12] which proposed

ruling was subsequently adopted by the district court judge. (Doc. 10).[13] As that

report and recommendation reasons:

> The plaintiff seeks damages on the claims that his sentence of
> unsupervised probation was unconstitutional because it required
> participation in the CRO drug testing program, and that defendants acted
> under color of state law while engaging in unlawful acts that led to
> revocation of probation and imprisonment. However, because the
> plaintiff has failed to show that the conviction or sentence in this case
> has been invalidated, this suit for damages is premature and is due to be
> dismissed under the authority of *Heck* . . . . Under *Heck*, if a plaintiff in

---

[12]  Filed electronically as an attachment to Defendants ECCRP and Ms. Zaner's Motion.
(Doc. 47-2 at 1-10).

[13]  Filed electronically as an attachment to Defendants ECCRP and Ms. Zaner's Motion.
(Doc. 47-3 at 1-2).

a federal civil rights action challenges the validity of his imprisonment the suit must be classified as a habeas corpus action, even if he has not sought release. The plaintiff's claims clearly implicate the validity of his sentence and subsequent imprisonment. The plaintiff therefore fails to state a valid claim under § 1983.

(Doc. 24-1 at 6-7 (citations omitted)).

In their opposition brief, Plaintiffs cite to *Harden v. Pataki*, 320 F.3d 1289, 1295 (11th Cir. 2003), and maintain that, because their § 1983 claims are "purely procedural" ones, the *Heck* rule does not apply to them. (Doc. 32 at 43-45). As the Eleventh Circuit explained this distinction in *Harden*:

> The difference between a purely procedural claim cognizable under § 1983 and a procedural claim where "the nature of the challenge to the procedures could be such as necessarily to imply the invalidity of the judgment," not cognizable under § 1983, *Edwards*, 520 U.S. at 645, 117 S. Ct. at 1587, is demonstrated by the contrary holdings in *Edwards* and *Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). In the latter, the Court held that prison disciplinary procedures violated due process if they did not provide for "advance written notice of the claimed" misconduct resulting in discipline or "a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken." *Id.* at 563, 94 S. Ct. at 2978. The Court in *Heck* distinguished *Wolff* because the damages sought were "for the deprivation of civil rights resulting from the use of the allegedly unconstitutional procedures," *Wolff*, 418 U.S. at 553, 94 S. Ct. at 2973, and not for deprivation of good-time credits. *Heck*, 512 U.S. at 482, 114 S. Ct. at 2370. In essence, the claim was "for using the wrong procedures, not for reaching the wrong result (*i.e.*, denying good-time credits). Nor is there any indication in the opinion, or any reason to believe, that using the wrong procedures necessarily vitiated the denial of good-time credits. Thus, the claim at issue in *Wolff* did not call into question the lawfulness of the plaintiff's continuing confinement." *Id.*

at 482–83, 114 S. Ct. at 2370. In *Edwards*, as in *Wolff*, the "complaint [ ] limited [the plaintiff's] request to damages for depriving him of good-time credits without due process, not for depriving him of good-time credits undeservedly as a substantive matter. That is to say, his claim posited that the procedures were wrong, but not necessarily that the result was." 520 U.S. at 645, 117 S. Ct. at 1587. However, in *Edwards*, unlike in *Wolff*, "[t]he principal procedural defect complained of [—'the deceit and bias of the hearing officer'—] would, if established, necessarily imply the invalidity of the deprivation of [the] good-time credits," which would inevitably invalidate the prisoner's sentence by challenging the duration of his confinement. *Id.* at 646, 647, 117 S. Ct. at 1588. <u>Thus, claims brought by state prisoners are not cognizable under § 1983 if they necessarily invalidate, directly or indirectly, an underlying criminal conviction or period of confinement, even if they allege only procedural violations and seek damages only for the procedural violation and not for the substantive result.</u> Only if such claims are purely procedural, as in *Wolff*, <u>where the alleged procedural defects—lack of advance written notice of the charges and a written statement of the basis of the decision—or the outcome of the action, would not necessarily invalidate an underlying conviction or sentence, will they be cognizable under § 1983</u>. *See e.g., Jenkins v. Haubert*, 179 F.3d 19, 21 (2d Cir.1999) (holding that *Heck* and *Edwards* do not bar a prisoner's § 1983 claim alleging bias by the prison's hearing officer in a disciplinary proceeding affecting only the conditions, but not the fact or duration, of confinement).

*Harden*, 320 F.3d at 1295 n.9 (emphasis added).

Regardless of whether Plaintiffs are correct in their reliance upon *Harden* and the exclusively procedural characterization of their claims, the court has found a more fundamental problem with Defendants' *Heck*-related defense: it is directly at odds with the Eleventh Circuit's decision in *Morrow v. Federal Bureau of Prisons*, 610 F.3d 1271 (2010). In *Morrow*, the Eleventh Circuit reversed a district court that had

entered a Rule 12(b)(6) dismissal of a <u>former</u> prisoner's § 1983 lawsuit who maintained that he had unlawfully spent additional time in prison due to an "employee's entering the incorrect start date." 610 F.3d at 1272.

As the Eleventh Circuit explained in *Morrow*:

> But we do not understand *Heck*'s rule to extend to a case like this one: where Plaintiff is not in custody and where Plaintiff's action-even if decided in his favor-in no way implies the invalidity of his conviction or of the sentence imposed by his conviction. For background, *see Spencer v. Kemna*, 523 U.S. 1, 118 S. Ct. 978, 988, 140 L. Ed. 2d 43 (1998) (explaining that not every civil action by former prisoner for damages tied in some way to his incarceration involves *Heck*'s application). <u>This case is one in which the alleged length of unlawful imprisonment-10 days-is obviously of a duration that a petition for habeas relief could not have been filed and granted while Plaintiff was unlawfully in custody</u>.

*Morrow*, 510 F.3d at 1272 (emphasis added).

Here, Defendants have not shown that Plaintiffs, who are no longer in custody, had any realistic access to habeas relief during their period(s) of alleged unlawful, but apparently relatively short, durations of confinement. Further, in light of *Morrow*, the court finds Defendants' reliance upon *Moore, supra*, to be misguided because, unlike the group of plaintiffs in this lawsuit, the plaintiff in *Moore* was still in custody at the time he filed his § 1983 prisoner civil rights action. As a result, proceeding by way of a habeas petition was a realistic option for Mr. Moore.

Additionally, both *Powers* and *Ray*, discussed *supra*, found *Heck v. Humphrey*

to be <u>inapplicable</u> under circumstances comparable to those presently before this court. *See Powers*, 501 F.3d at 603 ("We are persuaded by the logic of those circuits that have held that *Heck*'s favorable-termination requirement cannot be imposed against § 1983 plaintiffs who lack a habeas option for the vindication of their federal rights.");[14] *Ray*, 2013 WL 5428395, at *8 ("Here, none of the Plaintiffs are currently incarcerated and their prior stints in jail were too fleeting to permit the filing and resolution of a habeas suit[; consequently,] Plaintiffs' suit is not subject to *Heck*'s favorable-termination rule.").

Accordingly, consistent with *Morrow*, *Powers*, and *Ray*, *Heck* does not demand a Rule 12(b)(6) dismissal of Plaintiffs' claims for monetary damages,[15] and that portion of both motions is due to be **DENIED**.

## D. Qualified Immunity

Defendants ECCRP and Ms. Zaner further contend that Plaintiffs' second amended and restated complaint is due to be dismissed on the grounds of qualified immunity. As the Eleventh Circuit has explained regarding the scope of this defense to federal claims:

---

[14] In reaching this conclusion about *Heck*'s inapplicability in *Powers*, the Sixth Circuit relied upon the Eleventh Circuit's decision in *Harden v. Pataki*, discussed *supra*, as part of its persuasive support. 501 F.3d at 603.

[15] Once again, the absence of a conviction for Ms. Snow and Mr. Myers means that any reliance upon *Heck* as a defense is even more suspect for them. *See supra* at 23 n.10.

> As to Plaintiffs' § 1983 claims, "[q]ualified immunity offers complete protection for <u>government officials sued in their individual capacities</u> if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)). Qualified immunity from suit is intended to "allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted).

*Grider v. City of Auburn*, 618 F.3d 1240, 1254 (11th Cir. 2010) (emphasis added).

Here, the court sees several problems with Defendants' assertion of this defense as a bar to Plaintiffs' claims. First, qualified immunity has no bearing upon the viability of Plaintiffs' state law claims.[16]

Second, while qualified immunity might protect Ms. Zaner from any <u>federal</u> claims for monetary damages asserted against her individually,[17] the court disagrees that Defendant ECCRP is entitled to rely upon this federal defense because, unlike Ms. Zaner, it is not an individual, but rather, an entity. Further, as an entity, it can be held liable for unconstitutional acts of Ms. Zaner even if she may not <u>personally</u> be

---

[16]  Defendants ECCRP and Ms. Zaner have <u>not</u> asserted state-law immunity.

[17]  An action against a person in her official capacity seeks to impose liability on the entity which she represents, and not on her personally. *See, e.g., Welch v. Laney*, 57 F.3d 1004, 1008 (11th Cir. 1995) ("Welch's action against the Sheriff and Chief Deputy Sheriff in their official capacities imposes liability on the entity they represent, and not on them as individuals." (citing *Brandon v. Holt*, 469 U.S. 464, 471-72, 105 S. Ct. 873, 877-78, 83 L. Ed. 2d 878 (1985))).

liable for them. To the extent that *Moore v. Court Referral Office of Etowah County*, 4:09-CV-0933-IPJ-JEO, referenced by ECCRP and Ms. Zaner (Doc. 47 at 20-21), suggests that qualified immunity extends to an entity such as ECCRP, this court is simply not persuaded. In particular, *Moore* provides no reasoning why ECCRP is entitled to rely upon a qualified immunity defense even though it is only suable in one capacity.[18]

Third, Ms. Zaner has failed to adequately develop why she should benefit from the defense of qualified immunity and obtain a with-prejudice dismissal of all federal claims for monetary relief asserted against her individually at the pleadings stage.

### E.    Wanton Conduct Against COA And COG

COA and COG maintain that, because they are municipalities, they cannot be held liable for wanton conduct. Plaintiffs "concede the claim against Gadsden and Attalla for wanton conduct is due to be dismissed." (Doc. 51 at 36). Accordingly, the wantonness section of COA and COG's Motion is **GRANTED** as unopposed.

### F.    Punitive Damages Against COA And COG

COA and COG similarly maintain that, because they are municipalities,

---

[18]   At the hearing, counsel for ECCRP explained that the decision to dismiss ECCRP in *Moore* was based upon a respondeat superior analysis–ECCRP could not be held liable for the unconstitutional acts of Ms. Zaner because she was entitled to qualified immunity. This may have been the reasoning in *Moore*, but, because the court concludes that Ms. Zaner is not entitled to qualified immunity at this juncture, *Moore* does not help ECCRP.

Plaintiffs are prohibited from recovering punitive damages from them. Akin to their wantonness response, Plaintiffs concede that "the claims against Gadsden and Attalla for punitive damages [are] also due to be dismissed." (Doc. 51 at 36). Therefore, the punitive damages portion of COA and COG's Motion is **GRANTED** as unopposed.

### G.   Failure Of Certain Plaintiffs To State A Claim Against COA

COA separately seeks a dismissal of any purported claims asserted against it by Ms. Brannon, Mr. DuBose, Mr. Lynn, Mr. Myers, and Ms. Snow. Plaintiffs' restated pleading does not attempt to allege any COA-related claims on behalf of these particular plaintiffs. Further, Plaintiffs do not offer any response to this part of COA and COG's Motion in their opposition brief. Accordingly, this portion of COA and COG's Motion is **GRANTED** as unopposed.

### H.   Failure Of Certain Plaintiffs To State A Claim Against COG

COG separately seeks a dismissal of any purported claims asserted against it by Mr. Cantrell and Mr. Hunter. Plaintiffs' restated pleading does not attempt to allege any COG-related claims on behalf of these two plaintiffs. Further, Plaintiffs do not offer any response to this part of COA and COG's Motion in their opposition brief. Accordingly, this portion of COA and COG's Motion is **GRANTED** as unopposed.

## I.      Remaining Defenses

All other grounds offered in support of dismissal are, similar to qualified immunity, due to be **DENIED** as underdeveloped (*i.e.*, the absence of any on-point case authority cited and/or only 1 or 2 paragraphs of argument are devoted to the issue) and unpersuasive. Alternatively, these remaining defenses are due to be **DENIED** as better suited for disposition on a summary judgment record.[19] Such theories include:  failure to state a claim based upon the provisions of Alabama's Mandatory Treatment Act; no municipal liability because of judicial immunity;[20] no

---

[19] Additionally and, as briefly touched upon during the hearing, the standing-related issues of Plaintiffs' establishment of a non-speculative injury traceable, *i.e.*, causally connected, to the conduct of these defendants and also capable of redress through a favorable decision by this court are better suited for disposition on summary judgment. *See Hollywood Mobile Estates Ltd. v. Seminole Tribe of Florida*, 641 F.3d 1259, 1266 (11th Cir. 2011) ("Our decision in *Doe v. Pryor*, where we held that a plaintiff's injuries were not fairly traceable to a public official because the plaintiff had failed to allege how that official had caused those injuries, 344 F.3d 1282, 1285 (11th Cir. 2003), is instructive."); *Hollywood Mobile*, 641 F.3d at 1266 ("Redressability is established when a favorable decision would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." (internal quotation marks omitted) (quoting *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1290 (11th Cir. 2010) (alteration and internal quotation marks omitted))). By way of example only, Plaintiffs have alleged that "ECCRP employees and/or agents were the individuals who requested the warrants[,] not the municipality prosecutor." (Doc. 45 at 8 ¶ 23). At the hearing, however, Plaintiffs indicated that persons with non-discharged criminal cases could be subject to arrest simply under a return to court form requested by ECCRP without the issuance of any warrant. The discovery process should shed light on the return to court/warrant process and substantiate ECCRP's <u>traceable</u> involvement in the treatment of those who are deemed to be in default under the Program.

[20] As Plaintiffs correctly point out in their opposition brief, the Supreme Court has made it abundantly clear that "municipalities do not enjoy immunity from suit—either absolute or qualified—under § 1983." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166, 113 S. Ct. 1160, 1162, 122 L. Ed. 2d 517 (1993); *see also Owen v. City of Independence*, 445 U.S. 622, 650, 100 S. Ct. 1398, 1415, 63 L. Ed. 2d 673 (1980) (rejecting

municipal liability because of probation officer immunity; private debt; no municipal liability for alleged false imprisonment and false arrest; no municipal liability for alleged negligent supervision and training; and statute of limitations (including in particular each plaintiff's accrual of claim date and the impact of the continuing violation doctrine). *See, e.g., Ray*, 2013 WL 5428395, at *10 ("[A] greater level of factual development is required to make such an [accrual] evaluation, reinforcing the notion that 'a statute of limitations defense is generally not appropriate for evaluation on a motion to dismiss filed pursuant to Rule 12(b)(6).'" (quoting *McDaniel v. City of Fairfield*, No. 2:12–CV–03872–HGD, 2013 WL 1180320, at *1 (N.D. Ala. Feb. 19, 2013))).

### J.    Order Requiring Repleader

While Plaintiffs' new pleading is somewhat more specific than the prior ones, it still is rambling, repetitive, too long, and difficult to follow. For example, the complaint continues to have shotgun characteristics including the incorporation of allegations by reference.[21] The complaint also disregards Rule 8 of the Federal Rules of Civil Procedure which requires a complaint to have "a short and plain statement

---

qualified immunity defense for municipalities).

[21]    "The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (*i.e.*, all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002).

of the claim showing that the pleader is entitled to relief" as well as "simple, concise, and direct" allegations. Fed. R. Civ. P. 8(a)(2), (d)(1).

In particular, as it pertains to Plaintiffs' federal counts, Plaintiffs have only superficially identified a laundry list of constitutional provisions which they contend Defendants have violated (*i.e.*, the Due Process Clause, the Fourth Amendment, the Eighth Amendment, and the Equal Protection Clause) without either breaking down such claims into their requisite elements or, much less, connecting those elements to the alleged <u>factual</u> proof that Plaintiffs maintain plausibly supports each one of them. Plaintiffs' state law counts are similarly alleged in a generalized and conclusory fashion. Such a state of disorganization not only violates *Twombly*, but also, if permitted to continue, constitutes an impediment to this court's <u>and</u> the parties' ability to justly deal with discovery, summary judgment, class certification, and trial. Additionally, in the absence of requiring a clearer pleading from Plaintiffs, the Eleventh Circuit may deem the record too ambiguous for it to decide any issues on appeal. *Cf. Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) ("We are unwilling to address and decide serious constitutional issues on the basis of this [shotgun] complaint.").

Therefore, Plaintiffs are **HEREBY ORDERED** to replead their claims consistent with the above rulings and in a more definite and plausible fashion no later

than April 9, 2015.  In redrafting, the court encourages Plaintiffs to refer to pattern jury charges as a way to streamline their allegations and reduce the scope of their currently cumbersome complaint into a more manageable and plausible pleading. Plaintiffs are **HEREBY CAUTIONED** that their failure to replead in a concise and meaningful manner may result in the dismissal of one or more of their claims with or without prejudice.

### K.    Lifting Of Stay And Potential Severance Of Litigation

On December 4, 2013, the court entered a stay of discovery "until Defendants have answered or the court has addressed the merits of any subsequently filed motion(s) to dismiss." (Doc. 40 at 13). In light of the foregoing rulings, the court has determined that Plaintiffs' second amended and restated complaint contains claims that survive Defendants' Rule 12(b)(1) and 12(b)(6) challenges at this initial stage. Consequently, postponing the entry of a scheduling order is no longer appropriate.

Accordingly, the stay is **HEREBY LIFTED** and the parties are **HEREBY ORDERED** to meet for scheduling purposes and file a report of parties' planning meeting no later than April 30, 2015. When filing this report, the parties must address whether a bifurcated scheduling process is a better approach (*i.e.*, an initial scheduling order addressing discovery and merits-based issues of the named plaintiffs only and a second scheduling order to deal with class-based discovery and other Rule

23 issues, if necessary) than a scheduling framework in which individual and class issues overlap.

Within this report and, as discussed preliminarily during the hearing, the parties must also address whether they are in agreement that severing this case into two lawsuits is appropriate so that the claims involving the COA will be separate from those involving the COG. If a party disagrees with this approach, then the status report shall include an explanation of why along with any supporting case authority for such position.

## IV.   CONCLUSION

As set forth above, ECCRP and Ms. Zaner's Motion and the COG and COA's Motion are both **GRANTED IN PART** and otherwise are **DENIED**. Plaintiffs are **HEREBY GRANTED** until April 9, 2015, to replead **only** their plausible claims (including their elements and any alleged factual support) in a non-shotgun format consistent with the above rulings and other concerns addressed in this memorandum opinion. Finally, the stay previously in place is **HEREBY LIFTED**, and the parties are **HEREBY ORDERED** to meet and file their report of parties' planning meeting no later than April 30, 2015.

**DONE** and **ORDERED** this the 10th day of March, 2015.

**VIRGINIA EMERSON HOPKINS**
United States District Judge